UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES | ) |
| v. | ) CRIMINAL ACTION<br>) NO. 07-10048-WGY |
| STEPHANIE HONG TRINH, | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

YOUNG, D.J.                                                    July 31, 2009

## I.  INTRODUCTION

The defendant Stephanie Hong Trinh ("Trinh") moves to dismiss the indictment against her on the ground of prosecutorial misconduct. See Defendant's Motion to Dismiss Indictment ("Def.'s Mem.") at 1 [Doc. No. 274]. Trinh was called to testify before a grand jury on April 3, 2008. Id. at 1-2. Prior to her testimony, Trinh asserts that Assistant United States Attorney Richard Hoffman (the "prosecutor") informed her "that she was not a target of the investigation." Id. at 2. Based upon this assurance by the prosecutor, Trinh contends that she waived her Fifth Amendment right against self-incrimination and offered inculpatory testimony before the grand jury. See id.

Approximately one month after her grand jury testimony, Trinh was indicted for conspiracy to commit money laundering,

money laundering, unlawful monetary transactions, and aiding and abetting. See id. at 1. This, Trinh asserts, was based in part upon her testimony before the grand jury on April 3, 2008. Id.

Trinh argues that the prosecutor affirmatively misrepresented her status as a "target" of the investigation at the time of her grand jury testimony. See id. at 2-3. As such, Trinh concludes that this Court ought dismiss the indictment on the ground that she did not validly waive her Fifth Amendment right against self-incrimination, and thus was deprived of her substantive due process rights. Id. at 7-8.

The United States (the "government"), on the other hand, contends that Trinh "was amply and repeatedly advised of her rights and warned both that her testimony could be used against her, and that if she testified falsely, evasively, or misleadingly, she could, and likely would, be prosecuted." Government's Opposition to Defendant's Motion to Dismiss Indictment ("Gov.'s Mem.") at 7 [Doc. No. 277]. The government asserts that the warnings it afforded Trinh "more than satisfie[d] the Due Process Clause." Id. Moreover, it argues that at the time Trinh was informed she was not a "target" of the grand jury's investigation, it was true. Id.

The government's position is that it was Trinh's deliberately false and evasive testimony that led to its decision to seek her indictment. Id. at 11. For these reasons, the

government asserts that Trinh is unable to establish any constitutional violation and concludes that her motion should be denied. Id.

### A. Procedural Posture

On May 8, 2008, a grand jury returned a four-count indictment against Trinh charging her with conspiracy to commit money laundering, money laundering, unlawful monetary transactions, and aiding and abetting. Def.'s Mem. at 1. On that same date, Magistrate Judge Judith G. Dein issued a warrant for Trinh's arrest.

On June 4, 2008, law enforcement authorities executed the arrest warrant and took Trinh into custody. Trinh was arraigned on that same date and released on $50,000 bond.

On January 15, 2009, this Court issued an Order stating that all dispositive motions were to be filed by the parties no later than June 3, 2009. On June 3, 2009, Trinh filed this motion to dismiss the indictment. See Def.'s Mem. at 8. The government filed its opposition to Trinh's motion on June 17, 2009. See Gov.'s Mem. at 15. This Court heard oral arguments on June 30, 2009.

### B. Facts

On March 13, 2008, in connection with a money laundering investigation, the government issued Trinh a subpoena ordering her to appear and testify before a grand jury on March 27, 2008.

See Gov.'s Mem. at 3. Included with the subpoena was an "Advice of Rights" form, which advised Trinh that: (1) the grand jury was conducting an investigation of possible violations of federal criminal laws; (2) she had the right to refuse to answer any question if a truthful answer would tend to incriminate her; (3) anything she said could be used against her by the grand jury or in a subsequent legal proceeding; and (4) if she retained counsel, the grand jury would permit her a reasonable opportunity to step outside the grand jury room and consult with counsel if she desired. See Government's Exhibit A ("Exhibit A") [Doc. No. 277-2].

Trinh appeared in the grand jury lobby on March 27, 2008 and was interviewed by two federal agents. Gov.'s Mem. at 3; Def.'s Mem. at 1. Prior to the interview, however, the prosecutor advised Trinh of her rights as set forth in the "Advice of Rights" form, and warned her that if she made any false statements the government could pursue criminal charges against her. Gov.'s Mem. at 3. During the subsequent interview, Trinh was informed that the government was conducting an ongoing investigation that "focused on financial transactions in which she and other members of her family had been involved." Id. at 4. After the interview, it was agreed that Trinh would return a week later to testify before the grand jury on April 3, 2008. Id.

Trinh returned to the grand jury lobby as scheduled on April

4

3, 2008 and was again interviewed by two federal agents. Id.; Def.'s Mem. at 1. During the interview, the federal agents informed Trinh that they felt she was not being truthful with them and reminded her that if she lied to them, or to the grand jury, she would be prosecuted. Gov.'s Mem. at 4.

After the interview, Trinh was called to testify before the grand jury. See id. at 4. At the beginning of her testimony, the prosecutor advised Trinh, on the record, of her rights as set forth in the "Advice of Rights" form. Id. Additionally, the prosecutor informed Trinh "that she was not a target of the investigation . . . ." Id. He also warned her that "any false or misleading statement that she might make could subject her to criminal prosecution." Id. Trinh subsequently agreed to waive her Fifth Amendment right against self-incrimination and testified before the grand jury. See Def.'s Mem. at 2.

Approximately one month after Trinh's testimony, the government presented a third superseding indictment to the grand jury. See Gov.'s Mem. at 6. On May 8, 2008, the same grand jury that Trinh testified before on April 3, 2008 returned a four-count indictment charging her with conspiracy to commit money laundering, money laundering, unlawful monetary transactions, and aiding and abetting. Id.

### C. Federal Jurisdiction

This Court may exercise subject-matter jurisdiction over the present case pursuant to the grand jury's indictment of Trinh.[1]

## II. ANALYSIS

### A. Trinh Was a "Target" of the Grand Jury's Investigation at the Time of Her Testimony.

"[T]he test as to whether a witness is a target of a grand jury investigation cannot be whether he 'necessarily' will be indicted, but whether according to an objective standard he could be indicted."[2] United States v. Crocker, 568 F.2d 1049, 1054 (3d Cir. 1977).[3] For the purpose of this motion to dismiss, this Court has stated that it will assume, *arguendo*, that the government possessed substantial evidence - i.e., probable cause - linking Trinh to the commission of a crime at the time she offered testimony before the grand jury.

Under the Crocker test, there is no question that Trinh was a "target" of the grand jury's investigation. Because the

---

[1] "The grand jury's issuance of an indictment is what gives federal courts jurisdiction to hear a criminal case and impose a sentence." United States v. Longoria, 259 F.3d 363, 364 (5th Cir. 2001).

[2] In Crocker, the Third Circuit disavowed any subjective component of the test as to whether a witness is a "target" of the grand jury's investigation. Crocker, 568 F.2d at 1054. Thus, the prosecutor's argument to the contrary is without merit.

[3] It should be noted that even though Crocker is a Third Circuit opinion, it is still binding upon this Court. See Babb, 807 F.2d 272, 278 (1st Cir. 1986) ("[W]e find that the reasoning of . . . Crocker is dispositive.").

6

government had substantial evidence linking Trinh to the commission of a crime, it is clear that "under an objective standard [s]he *could* [have been] indicted" at the time of her testimony. Crocker, 568 F.2d at 1049 (emphasis added). Therefore, Trinh was a "target" of the grand jury's investigation on April 3, 2008.

### B. Even So, the Indictment Against Trinh Ought Not Be Dismissed.

"It is well settled that district courts may exercise their discretionary power to dismiss an indictment on grounds of prosecutorial misconduct . . . ." United States v. Accetturo, 858 F.2d 679, 681 (11th Cir. 1988). Though district courts possess such power, dismissal of an indictment "is extremely rare." United States v. Stokes, 124 F.3d 39, 46 (1st Cir. 1997). Such drastic measures may only be employed in cases of "serious and blatant prosecutorial misconduct that distorts the integrity of the judicial process." United States v. Giorgi, 840 F.2d 1022, 1030 (1st Cir. 1988) (citation omitted).

Trinh argues that she did not knowingly, voluntarily and intelligently waive her Fifth Amendment right against self-incrimination when testifying before the grand jury. Def.'s Mem. at 8. Essentially, Trinh asserts that she would not have offered inculpatory statements but for the prosecutor's assurance that she was not a "target" of the grand jury's investigation. See id. at 7. On this basis, Trinh concludes that "she was misled by the

7

prosecutor[] . . . into incriminating herself and that her indictment was, at least in part, the product of [her] testimony." Id.

The First Circuit has held that a grand jury witness is constitutionally entitled to at least *some* warning regarding his or her right against self-incrimination. See United States v. Babb, 807 F.2d 272, 278 (1st Cir. 1986). The Supreme Court, however, "has explicitly held that grand jury witnesses are not constitutionally entitled to 'target' or 'potential defendant' warnings." United States v. Pacheco-Ortiz, 889 F.2d 301, 308 (1st Cir. 1989) (citing United States v. Washington, 431 U.S. 181, 189 (1977)). Indeed, such warnings "add nothing of value to protection of Fifth Amendment rights." Washington, 431 U.S. at 189. Thus, this Court's task is not to evaluate which warnings were given, "it is to determine 'whether, considering the totality of the circumstances, the free will of the witness was overborne.'" Babb, 807 F.2d at 278 (quoting Washington, 431 U.S. at 188). Otherwise stated, this Court must "determine whether the misrepresentation [of the prosecutor] actually misled the witness." United States v. Winter, 663 F.2d 1120, 1151 (1st Cir. 1981).

The First Circuit had occasion to address a set of facts similar to those of the case at bar in United States v. Babb, 807 F.3d 274 (1st Cir. 1986). In Babb, the defendant was subpoenaed

8

to testify before a grand jury regarding a massive heroin and cocaine distribution organization. Id. at 274. On the date of the defendant's testimony, he appeared without the assistance of counsel. Id. at 275. Before he began testifying, the defendant was given the usual oath and was advised of his Fifth Amendment right against self-incrimination. Id. Additionally, the prosecutor informed him that he was not a "target" of the grand jury's investigation. Id. Nevertheless, the defendant "was a reticent witness, answering most questions with a terse 'No, sir' or 'Yes, sir.'" Id. As a result, the defendant was charged with perjury, possession with intent to distribute, and conspiracy to distribute heroin and cocaine. Id.

In the defendant's subsequent prosecution, he filed a pre-trial motion to dismiss the indictment. Id. His asserted ground for dismissal was the affirmative misrepresentation of the prosecutor regarding his "target" status. Id. Essentially, the defendant argued that the prosecutor engaged in misconduct because the prosecutor assured the defendant that he was not a "target" of the grand jury's investigation, yet he was subsequently indicted on numerous charges. See id. at 274.

In affirming the district court's decision to deny the defendant's motion, the First Circuit reasoned that the defendant "received all the warnings required by the Constitution." Id. at 278. Furthermore, it noted that prior to his testimony, the

defendant was well aware of the subject-matter of the grand jury's investigation. Id. On this basis, the First Circuit concluded that the defendant's purported reliance on the prosecutor's misrepresentation did not render his subsequent criminal prosecution fundamentally unfair. See id. at 278-79.

Another factually analogous case addressed by the First Circuit was that of United States v. Winter, 663 F.2d 1120 (1st Cir. 1981). In Winter, the defendant was brought by the government to testify before a grand jury. Id. at 1150. Prior to his testimony, the prosecutor informed the defendant that he was present to testify because his name had "come up" during the course of the grand jury proceedings. Id. at 1151-52. Additionally, the prosecutor told the defendant:

> that he had a [F]ifth [A]mendment right to refuse to answer questions or to produce personal documents that might tend to incriminate him, that any such answers or documents could be used against him in a court of law, that he had a right to an attorney, and had a right to consult with that attorney outside the grand jury room at reasonable intervals.

Id. at 1151. Lastly, on the record, the prosecutor informed the defendant was he was not a "target" of the grand jury's investigation. Id. at 1152. As the prosecutor later admitted, however, he did consider the defendant a "subject" of the investigation.[4] Id.

---

[4] As set forth in the United States Attorney's Manual, a "subject" is defined as "'a person whose conduct is within the

10

As a result of the prosecutor's misleading statement regarding the defendant's "target" status, the defendant moved to suppress his grand jury testimony. Id. at 1150. As a basis for suppression, the defendant asserted that the prosecutor "misled [him] into waving his constitutional rights and testifying . . . by informing him that he was not a target of the grand jury investigation when he was . . . ." Id. Essentially, the defendant argued that had he been aware that he was a "target" or "subject" of the grand jury's investigation, he undoubtedly would have asserted his Fifth Amendment privilege against self-incrimination. Id.

In affirming the district court's denial of the defendant's motion, the First Circuit stated that the defendant could not have been misled by the prosecutor's statement. Id. at 1152. The court reasoned that the defendant was informed his name had "come up" during the grand jury proceedings, thus putting him on notice that he may have been involved in the investigation. See id. Additionally, it stated that "[t]he prosecutor's other warnings more than fulfilled any constitutional requirement . . . ." Id. On this basis, the First Circuit concluded that the defendant's grand jury testimony should not be suppressed because accurate "potential-defendant warnings add nothing of value to protection

---

scope of the grand jury's investigation.'" In re Angiulo, 579 F.2d 104, 105 n.1 (quoting United States Attorney's Manual).

11

of Fifth Amendment rights." Id. (internal quotations omitted).

As the foregoing discussion reveals, both Winter and Babb hold that "once the prosecutor has fulfilled any constitutional requirements and . . . the witness is apprised of the subject of the inquiry, additional warnings, even if inaccurate, are irrelevant." Babb, 807 F.3d at 278 (citing United States v. Winter, 663 F.2d 1120 (1st Cir. 1981)). Based upon these cases, it appears that the First Circuit holds that warnings from a prosecutor that a witness is, or is not, a "target" – even if inaccurate – will not render a subsequent criminal prosecution fundamentally unfair so long as the prosecutor: (1) advised the witness of his Fifth Amendment right against self-incrimination and the consequences of foregoing that right; and (2) apprised the witness of the subject-matter of the grand jury's investigation – thus putting the witness on notice that they are, or may potentially become, a part of it. See Babb, 807 F.3d at 278.

Applying these principles to the facts of the present case, Trinh is not entitled to have the indictment against her dismissed. As in Babb and Winter, it is beyond dispute that Trinh was aptly informed by the prosecutor of her Fifth Amendment right against self-incrimination. See Exhibit A at 3, 6-8. Indeed, the prosecutor informed Trinh that, "[a]s a witness before the Grand Jury, [she had] a right to refuse to answer any question if [she]

believe[d] that a truthful answer . . . would tend to incriminate [her]." Id. at 6. Additionally, Trinh was informed that anything she said could be used against her either by the grand jury, or in other court proceedings. Id. Lastly, the prosecutor informed Trinh that she had the right to hire an attorney, and that she had the right to consult with that attorney outside the grand jury room at reasonable intervals. Id. at 7.

As the First Circuit held in Babb, Trinh "received all the warnings required by the Constitution." Babb, 807 F.2d at 278. As such, by informing Trinh of her Fifth Amendment right against self-incrimination, the prosecutor fulfilled his constitutional responsibility. See id.

That Trinh was aptly informed of her Fifth Amendment right against self-incrimination is not alone sufficient for the government to avoid dismissal of the indictment under Babb and Winter. In addition, it must be shown that she was apprised of the subject-matter of the grand jury's investigation. See id.

As a result of Trinh's interactions with the prosecutor and the federal agents before, and during, her grand jury testimony, Trinh could hardly argue that she was not apprised of the subject-matter of the grand jury's inquiry. Prior to Trinh's testimony before the grand jury, she was interviewed by two federal agents and the prosecutor. See Gov.'s Mem. at 3. During that interview, the prosecutor confirmed with Trinh that she was

aware several members of her family had already been indicted, and that the grand jury's investigation "was focused on financial transactions in which she and other members of her family had been involved." Id. at 4. Furthermore, during a second interview the federal agents informed Trinh that they believed she was not being honest with them. Id. Lastly, during her grand jury testimony, Trinh was informed, on the record, that the grand jury was conducting an investigation of possible violations of federal criminal law; specifically, that it was investigating violations of the federal drug trafficking and money laundering laws. Exhibit A at 5-6.

Based upon the fact that Trinh was aware: (1) that her family members had already been indicted; (2) that the investigation of illegal financial transactions of which she and her family were involved was ongoing; (3) that the federal agents believed she was not being honest with them; and (4) that the grand jury was investigating potential violations of the federal drug trafficking and money laundering laws, there can be no question but that she was sufficiently apprised of the grand jury's inquiry. Furthermore, these same factors lead to the inevitable conclusion that Trinh was on notice that she was already, or may potentially become, a "target" of the grand jury's investigation. As a result, under Babb, Trinh is unable to establish that the subsequent criminal prosecution is

fundamentally unfair under the Due Process Clause.

Trinh correctly asserts that she was a "target" of the grand jury's investigation at the time of her testimony, and that the prosecutor misrepresented her status by informing her to the contrary. Def.'s Mem. at 2-3. Nevertheless, the prosecutor sufficiently apprised Trinh of her Fifth Amendment right against self-incrimination, as well as the subject-matter of the grand jury's inquiry. Therefore, it cannot be said that Trinh's will was overborne such that she was actually misled by the prosecutor's assertion. See Winter, 663 F.2d at 1151. Thus, under applicable First Circuit precedent, the prosecutor's warning that she was not a "target" – though inaccurate – was "irrelevant." See Babb, 807 F.2d at 278.

### III. CONCLUSION

Under Crocker, Trinh was a target of the grand jury's investigation at the time of her testimony. Thus, the prosecutor's assurance to the contrary was an affirmative misrepresentation. This, however, does not render the subsequent prosecution of Trinh fundamentally unfair under the Due Process Clause. Because, as required by applicable First Circuit precedent, Trinh was informed of her Fifth Amendment right against self-incrimination, as well as the subject-matter of the grand jury's inquiry, the additional "target" warning – though inaccurate – was "irrelevant." See Babb, 807 F.2d at 278.

Accordingly, Trinh's motion to dismiss is DENIED.

    SO ORDERED.

                                     /s/ William G. Young
                                     WILLIAM G. YOUNG
                                     DISTRICT JUDGE